WASHBURN v. JACKSON & TINDLE.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — ADDITIONAL COMPENSATION JUSTIFIED BY CHANGED CONDITION OF INJURED EMPLOYEE.

> Under the workmen's compensation act (2 Comp. Laws 1915, § 5467), the department of labor and industry may reopen an award and make additional allowances where it appears that the condition of the claimant has changed from what it was at the preceding hearing.[1]

2. SAME—EVIDENCE SUFFICIENT TO JUSTIFY ADDITIONAL AWARD.

> Evidence that plaintiff's condition had changed since the former hearing and award, rendering him unable to work at his former occupation as a shingle sawyer, held, sufficient to justify the department of labor and industry in reopening his case and awarding him additional compensation.[2]

Certiorari to Department of Labor and Industry. Submitted January 6, 1925. (Docket No. 1.) Decided April 3, 1925.

Isaac Washburn presented his claim for compensation against Jackson & Tindle, Inc., for an accidental injury in defendant's employ. From an order awarding compensation, defendant and the Lumbermen's Mutual Casualty Company, insurer, bring certiorari. Affirmed.

*Alexander & Ruttle*, for appellants.

BIRD, J. Plaintiff, by trade, is a shingle sawyer. While engaged at that work for defendant the little finger of his left hand came in contact with the saw and it tore away most, if not all, of the flesh. Application was made for an award and it was granted by the board of arbitration. Defendant acquiesced

_____

[1]Workmen's Compensation Acts, § 151; [2]Id., § 151.

in the award.   On January 10, 1922, plaintiff signed a receipt for the entire award.   Later he filed a petition with the board of labor and industry to have the case reopened, claiming that his injury had resulted in a permanent disability to perform the work in which he was engaged when he was injured.   In response to the petition an arbitration hearing was held and testimony taken.   The conclusion of the commissioner was that plaintiff's petition should be denied, because his condition appeared to be the same as it was at the first hearing, and because no appeal was taken from the first order.   An appeal was taken to the full board and this conclusion was reversed, and a further award was granted.   Defendant insurance company raises the question on certiorari that, the first order not having been appealed from, the question sought to be litigated is *res adjudicata.*

This court has said that the board could review a weekly payment award and could reopen an award and make additional allowances where it appeared that the condition of the claimant had changed from what it was at the preceding hearing.   *Estate of Beckwith* v. *Spooner,* 183 Mich. 323 (Ann. Cas. 1916E, 886); 2 Comp. Laws 1915, § 5467.

In the present case the board found as a fact from the testimony that there had been a change in plaintiff's condition.   The only question, therefore, for us to consider is whether the board was justified in reaching that conclusion.   The following bits of testimony are taken from plaintiff's examination:

"*Q.* Now, has there been any change in the finger since the time of the last hearing in this case?   Has there been any stiffening of the finger, or any further growths in it?

"*A.* Yes, sir.

"*Q.* Tell us what.

"*A.* You can see right here.   There is something that has come on my fingers since the last hearing. What it is I cannot tell you.

"*Q.* Is that sensitive?

"*A.* Yes, sir.

"*Q.* Can you stand to have that touched?

"*A.* Well, a person can touch it but it goes all through my arm.

"*Q.* Through your left arm?

"*A.* Yes, sir.

"*Q.* What has been the condition of your left arm and elbow and wrist and hand since the last hearing held here in this cause?

"*A.* It has been, if I work any at all, it bothers me all along here, if I lift anything.

"*Q.* Would you say this arm was weaker now than it was then?

"*A.* Yes, sir.   *   *   *

"*Q.* State whether or not the finger and the left side of your left hand are stiffer now than they were at the time of the last hearing?

"*A.* They certainly are.    This joint here is stiffening up now more than it was, a good deal.

"*Q.* What has been the result of attempting to work with the hand; what happens to you physically if you attempt to work with your left hand?

"*A.* The only thing I can do is to get work I can do, and stand it as long as I can, and then I have to lay off."   *   *   *

Cross-examination.

"*Q.* Then why do you say your hand is worse now than it was at that date if you don't remember the date?

"*A.* Because I know it bothers me more.

"*Q.* Did it start bothering you more during the past, or has it been gradually getting worse?

"*A.* Bothered me more during the last five months.

"*Q.* Started during the last five months?

"*A.* If it had been all right I would not have been in here at all.

"*Q.* When did your hand start getting worse?

"*A.* Been growing worse ever since I cut it.

"*Q.* Ever since the accident?

"*A.* Yes, sir.

"*Q.* In what way has your hand got worse now than it was at the last hearing?

"*A.* It is weaker.

"*Q.* Where is it weaker, in the wrist, or where?

"*A.* Follows right up along in the back of this hand, in here.

"*Q.* Up along the back of your little finger?

"*A.* More in the wrist here just the same.

"*Q.* Your hand is much weaker in the wrist from there on up?

"*A.* It cramps, just closes this finger up here some times."

Redirect-examination.

"*Q.* You may state whether or not an infection developed from the injury to your little finger, which spread into your hand?

"*A.* Spread into my hand, yes, not any more than just what I call rheumatism."

There was considerable other testimony of a like character.

It was undoubtedly difficult for plaintiff to tell at the first hearing just what condition his injury would leave him in. Had his finger been sawed off it would always be off, and the final result would have been more definite, but here was a laceration of the flesh, and he had a right to expect that it would heal and improve, because the tendency of nature is in that direction. This left the question of his final condition more or less uncertain. After a period he attempts to resume his old work and finds he cannot do it. It was shown by expert evidence that he could not saw shingles and hold such a position by reason of his crippled hand, without great danger of getting further injuries. When he determines that his injuries are permanent he applies to have his case reopened and a further award made. We think the proofs warranted the action of the board.

The award will be affirmed.

McDONALD, C. J., and SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. CLARK, J., concurred in the result.